NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-2599-13T4


VICTOR LOURO and
JENNIFER LOURO,

     Plaintiffs-Respondents,

v.

FILIPE PEDROSO[1] and PEDROSO
LAW FIRM, P.C.,

     Defendants,

and

PEDROSO LEGAL SERVICES, LLC,

     Defendant-Appellant.

_____

     Argued April 15, 2015 — Decided June 4, 2015

     Before Judges Ashrafi and O'Connor.

     On appeal from Superior Court of New Jersey,
     Law Division, Essex County, Docket No.
     L-5717-12.

     Filipe Pedroso argued the cause for pro se
     appellant.

     Monique D. Moreira argued the cause for
     respondents (Jose B. Moreira, P.C.,
     attorney; Ms. Moreira and Jose B. Moreira,
     on the brief).

---

[1] The party was incorrectly designated as Felipe Pedroso.

PER CURIAM

Attorney Filipe Pedroso, who is a sole practitioner operating his law practice in corporate form pursuant to Rule 1:21-1A or -1B, appeals on behalf of Pedroso Legal Services, LLC, from a judgment of more than $21,000 entered after a jury trial for the non-payment of office rent. He contends the judgment should not have included the limited liability company he formed while the lawsuit was pending but should be only against Pedroso Law Firm, P.C. The trial court ruled that the limited liability company was a successor to the professional corporation that was originally the named defendant and that the firm under its new name was also liable for the judgment. We agree and affirm.

Appellant has not provided a full record of the case.[2] He has not provided transcripts of the trial but initially filed only transcripts of the jury's verdict and the trial court's post-trial hearing regarding the form of the judgment. After plaintiffs filed a responding brief in this court, appellant added a transcript of the testimony of a single witness at the trial, the prior owner of the building in which the firm's

---

[2] It is the appellant's responsibility to provide this court with the record relevant to all issues presented on appeal. See R. 2:5-3, 5-4, 6-1.

office was rented.  Nevertheless, we can deduce the following from the limited record we have been provided.

On August 1, 2012, plaintiffs Victor and Jennifer Louro filed a complaint against Pedroso individually and Pedroso Law Firm, P.C. ("the law firm" or "P.C.") to eject them from commercial premises at 38 Jefferson Street in Newark. Plaintiffs had acquired title to the property in May 2012 from a third party following a foreclosure and a sheriff's sale of the property.  Plaintiffs also sought compensation for unpaid rent for defendants' continuing use of office space at the property without paying its fair rental value.

Before the case came to trial, the court issued an order ejecting Pedroso and the law firm from the premises by the end of June 2013.  Unbeknownst to the court and plaintiffs, Pedroso established a new limited liability company on July 13, 2013, which he named Pedroso Legal Services, LLC ("the LLC").  He was the founder and has always been the sole member of the LLC. Using the LLC as the new name for his firm, he resumed his practice of law at 8 Wilson Avenue, which is close to 38 Jefferson Street in the Ironbound section of Newark.

The jury trial was held in December 2013 before Judge W. Hunt Dumont.  Plaintiffs alleged that Pedroso had fraudulently

prepared and executed two vastly different leases with the prior owner of the property, Armando Pena, who is related to Pedroso.

Pena, who testified through a Portuguese interpreter, was the owner of 38 Jefferson Street from 2001 to 2012. In 2011, foreclosure proceedings commenced, and Pena eventually lost his title. Pena testified that Pedroso is his step-daughter's husband and had rented the first floor of the building for his law practice. Although Pena acknowledged his signature on several documents shown to him at the trial, he stated he did not read English well and did not understand the contents of the documents. He testified that Pedroso had prepared the documents and he trusted their contents. He was collecting rent of $1,500 per month from Pedroso's law firm until February 2010. At about that time, Pena agreed that the law firm's rent would be reduced to $425 per month in exchange for legal services he was receiving from Pedroso, which were apparently related to the pending foreclosure of the property. However, Pena did not receive any rent payments from Pedroso and his law firm after February 2010.

The first lease prepared by Pedroso, which was marked as Exhibit P-1 at the trial, was dated December 1, 2007. It was for a term of one year and designated the rent for the first-floor office space to be $2,500 per month. The lease was signed

by Pena and by Pedroso as president of "Law Offices of Filipe Pedroso, P.C." A one-paragraph "Lease Extension" dated November 4, 2008 (Exhibit P-2) continued the rent at $2,500 per month for another year. The Lease Extension was signed by Pena and by Pedroso as President of "Pedroso Law, P.C." Plaintiffs alleged that the 2007 lease and the 2008 lease extension overstated the rent that the law firm was paying because they were intended to be used by Pena to apply for financing from a bank.

The second lease prepared by Pedroso (Exhibit P-3) was dated December 1, 2009, and signed by Pena and by Pedroso as president of "Pedroso Law, P.C." It was for a term of ten years and set the rent for the same first-floor office space at $425 per month for the entire ten-year term. According to plaintiffs, this second lease was intended to defraud a subsequent purchaser of the property once it became apparent that the mortgage on the property would be foreclosed. Since we do not have transcripts of the entire trial, we do not know what Pedroso's defenses were to plaintiffs' allegations.

By responding to specific questions on a verdict form, the jury found that the law firm had occupied the first-floor space at 38 Jefferson Street during plaintiffs' ownership from May 1, 2012, to June 30, 2013, and that the value of that use was $1,500 per month. The jury also found that plaintiffs had not

proven by clear and convincing evidence that Pedroso committed a fraud against plaintiffs with respect to use of the premises and the two leases he prepared. Therefore, the jury's verdict for unpaid rent was only against the law firm and not against Pedroso personally.

After the trial, plaintiffs submitted to the judge a proposed form of judgment for $21,000 ($1,500 multiplied by fourteen months), plus pre-judgment interest and costs, to be entered against "Pedroso Law Firm, P.C. and any subsequent law firm created by Felipe Pedroso." Over the next several weeks, the parties submitted letters disputing whether the judgment should be entered against any entity other than Pedroso Law Firm, P.C.

On January 8, 2014, Judge Dumont heard argument regarding the form of the judgment. He ruled that the judgment would not be entered against "any subsequent law firm" but that the LLC would be included as a named defendant against whom the judgment would apply since it was already in existence and was a successor of the law firm.

On appeal of that ruling, Pedroso argues that the LLC is a separate entity that was not named as a defendant in this case and against which a judgment cannot be entered. He cites cases for the general proposition that a corporate entity is separate

from its parent and its shareholders, and he argues that it is a violation of the LLC's due process and equal protection rights, and its rights to fundamental fairness under our State Constitution, to include it as a judgment debtor in this case.

We find no error in Judge Dumont's careful consideration of the issue and his ruling that the LLC is a successor to the business of the law firm and is thus obligated to pay the judgment.

At the January 8, 2014 hearing, Judge Dumont asked Pedroso when he formed the LLC, what the purpose was of forming the new entity, what the nature of its practice is, who owned each entity, and specifically, why the firm under a new name should be considered a different party from the firm under its former corporate name. Pedroso was evasive as to when he formed the LLC, claiming that he did not want to misstate the date, even though he must certainly have known he formed it shortly after his firm was evicted from 38 Jefferson Street just six months earlier. He admitted that both corporate entities were created by and owned solely by him, and that he was the only lawyer in the firm. He did not identify any new or specialized area of practice for which the entity had been formed. He could not deny that the office location of the firm under its new name was

virtually down the street from the old firm, but he claimed that the two firms did not share the same clients or client base.

Pedroso argued that the old firm was not doing any business and that the new firm was seeking to "rejuvenate" his law practice by seeking new clients through a marketing strategy, namely, a website and internet contact with clients. He claimed he was forming "a new image" as Pedroso Legal Services, LLC. He stated he only included the name Pedroso on the letterhead of the new firm because attorney ethics rules in this State require that it be included.[3]

Remarkably, Pedroso argued that, just as some home building or remodeling contractors might create separate limited liability companies for the construction of each individual house so that they can "isolate" their potential liability, he can do the same as a lawyer with respect to his law practice. After he tried to avoid the judge's hypothetical questions about what liability the new firm had for debts of the law firm for such things as fees owed to deposition stenographers, he ultimately claimed that the LLC would have no liability for any

_____

[3] The most prominent feature of the letterhead of Pedroso Legal Services, LLC, is a multi-colored website address in much larger and bolder type than any other printed material. The letterhead includes Pedroso's last name but does not include his full name and gives no indication that he is the only attorney in the firm.

such debts incurred by the law firm.  He stated that the firm in fact had no such debts and that the rent arrears debt of this case was merely "pending" at the time the LLC was created. Pedroso argued that any judgment creditor of the old law firm would have to bring a separate lawsuit against his new law firm, including the filing and service of a new summons and complaint against the LLC, in order to obtain a judgment against the LLC.

The trial judge would not countenance such arguments and made findings fully supported by the record.  The judge found that Pedroso changed the name of his firm as soon as he moved out of the Jefferson Street office.  There was no dispute that Pedroso was engaged alone in the practice of law and that he continued to practice after June 2013, although at a new location and under a new firm name.  The judge found there was nothing significantly different in Pedroso's practice of law under the former corporate name and under the new LLC.  The judge stated to Pedroso: "Each of these firms were created by you.  There is an identity of interest between them.  You're both located in the Ironbound section of Newark.  You are the sole practitioner of the firm.  You're using the letterhead of the former law firm."[4]

---

[4] The judge was referring to correspondence the court had received in December 2013 on letterhead marked "PEDROSO LAW
(continued)

Based on these findings, the judge concluded that the LLC is simply the new name of Pedroso's law firm, which has continued in business. The judge stated that applying the judgment to any law firm Pedroso might create in the future would be too broad a remedy for plaintiffs but that Pedroso Legal Services, LLC, was an existing successor of Pedroso Law Firm, P.C., and had full notice of the proceedings. Therefore, the judgment would also be against the LLC.

The law recognizes that a corporation is a separate entity from its shareholders, and that the shareholders are generally not liable for the contractual obligations of the corporate entity. See State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983). "Except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil." Ibid. (citing Lyon v. Barrett, 89 N.J. 294, 300 (1982)). However, the corporate veil will be pierced "to prevent an independent corporation from being used to defeat the ends of justice, Telis

_____

(continued)
Professional Corporation." No street address or telephone number was included on the letterhead, and no full name of any attorney. Thus, Pedroso was appearing in court on behalf of himself and the two corporate entities under yet a different name from his prior or current law firm names. We note as well that the names of the law firm used for the leases that Pedroso prepared and signed in 2007 through 2009 are different from other designations of the law firm. The record does not reveal whether these other names were actual corporate entities or Pedroso simply used different firm names on different documents.

v. Telis, 132 N.J. Eq. 25 (E. & A. 1942), to perpetrate fraud, to accomplish a crime, or otherwise to evade the law, Trachman v. Trugman, 117 N.J. Eq. 167, 170 (Ch. 1934)." Ventron Corp., supra, 94 N.J. at 500.

Here, Pedroso believes he can evade the payment of a judgment for rent arrears on the office space his law firm occupied simply because he has decided to "rejuvenate" and to change the "image" of his firm under a new name and at a different location. The legal profession is not so disdainful of the rights of creditors that it would allow Rules 1:21-1A and -1B to be thus misused by a member of the New Jersey bar. The Rules of Professional Conduct for lawyers in this State do require general honesty. See RPC 8.4(c).

In Ramirez v. Amsted Industries, Inc., 86 N.J. 332 (1981), a products liability case, the Court held that a successor corporation that acquired the assets of a predecessor corporation can be held responsible for the debts and liabilities of the predecessor if:

> (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities.

[<u>Id.</u> at 340-41.]

Here, Judge Dumont found that the LLC is merely a continuation of the law firm under its prior corporate identity. Pedroso's license to practice law in this State was used in conducting the business of the prior law firm just as it is now used to conduct the business of the successor LLC. Appellant offered no credible evidence that the LLC is not a continuation of the law practice of the prior firm.

Appellant argues that the judgment could not be entered in the absence of service of process upon the LLC. However, our courts have permitted the amendment of judgments to correct the name of the responsible party. In <u>Bussell v. DeWalt Products Corp.</u>, 259 <u>N.J. Super.</u> 499, 503 (App. Div. 1992), <u>certif. denied</u>, 133 <u>N.J.</u> 431 (1993), after the plaintiff obtained a $600,000 judgment against DeWalt Products Corporation, it moved to amend the judgment to name DeWalt's successor, Black & Decker (U.S.) Inc. <u>Id.</u> at 504. The trial court granted the motion, finding that Black & Decker was the real party in interest and had actually defended the lawsuit through its insurance carrier. <u>Ibid.</u> We affirmed the amendment because Black & Decker had notice of the lawsuit and participated in the defense. We noted: "Even if an individual is not named as a party of record, he may be liable for the judgment if he participated in the suit

12                                                    A-2599-13T4

or had an opportunity to be heard." Id. at 510-11. See also Louisville & Nashville R.R. Co. v. Schmidt, 177 U.S. 230, 238, 20 S. Ct. 620, 623, 44 L. Ed. 747, 751 (1900) (Where judgment was entered against an entity that was not named originally in the pleadings but which had notice and participated in the litigation, "[t]he mere fact that the proceeding to hold it liable was by rule does not conflict with due process under the Fourteenth Amendment . . . .").

In Bohny v. Associated Dyeing & Printing Corp., 12 N.J. Misc. 259, 260-62 (Sup. Ct. 1934), the court permitted amendment of the defendant's name in a judgment from that of the prior corporate entity, which had declared bankruptcy at the time of the conduct complained of in the action, to a similarly-named corporate entity, which held all of the previous company's assets. Describing the second corporate entity as the "successor in fact, if not in law" of the first, the court noted that a motion to amend the pleadings "would have been granted as of course . . . ." Id. at 261.

The reasoning of these cases is similar to the standard stated in Rule 4:9-3 for relation back of an amendment of a pleading:

> An amendment changing the party against whom a claim is asserted relates back if . . . that party (1) has received such notice of the institution of the action that the party

> will not be prejudiced in maintaining a
> defense on the merits, and (2) knew or
> should have known that, but for a mistake
> concerning the identity of the proper party,
> the action would have been brought against
> the party to be brought in by amendment.

Here, the LLC knew through its sole member, Pedroso, that an action for unpaid rent was pending and that Pedroso had changed the name and corporate form of his law firm while that action was pending. There is no issue as to the notice the LLC had of plaintiffs' lawsuit and of the jury's verdict. Although it is somewhat inaccurate to describe the naming of the original defendant law firm as a "mistake," Pedroso's actions in founding a new corporate entity to replace the existing defendant provide the equivalent justification for allowing the amendment of the judgment to include the LLC as a successor defendant.

In sum, Judge Dumont rejected Pedroso's arguments for good reason, found that Pedroso Legal Services, LLC, was a continuation of Pedroso's law practice under the name Pedroso Law Firm, P.C., and correctly determined that the judgment should apply to the successor law firm.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                      A-2599-13T4